IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SUNLINE USA LLC** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 22-1650 |
| | : | |
| **EZZI GROUP, INC., AHMAD RASOULI, STERLING ARC CORP., ROBIN SHUGAR, ARON BUCHMAN** | : : : | |

# MEMORANDUM

**MURPHY, J.**                                                                                               **March 31, 2025**

    This is the rare occasion where we are compelled to refuse a represented defendant's request to lift an entry of default. At the start of the case, defendant Robin Shugar responded to Sunline's complaint by asking us to compel arbitration, as required under the agreement between Sterling (Ms. Shugar's company) and Sunline. Ms. Shugar allowed Sterling to default, but this seemed tolerable since the case was going to arbitration by Ms. Shugar's demand, and Ms. Shugar repeatedly told us that she controlled Sterling.

    Turns out, neither party wanted to initiate arbitration, and Sunline eventually agreed to dismiss Ms. Shugar. But then Sunline sought default judgment against the remaining defendants, including Sterling. Bad news for Ms. Shugar. And surely enough, Sterling suddenly appeared in the case through counsel — the same counsel that had represented Ms. Shugar from the start — and asked us to lift the default and again compel arbitration based on the same arguments Ms. Shugar had made long ago. This sort of tactical shell game ought to be discouraged. We find that Sterling waived its right to compel arbitration by defaulting and that, under the circumstances of the case, granting relief from default would be inappropriate. Accordingly, we deny Sterling's motion for relief from default and maintain the default against it.

I. **Factual Background**

Sunline filed suit in this court in 2022 against Sterling Arc Corp., Robin Shugar, Aron Buchman, Ezzi Group, Inc., and Ahmad Rasouli. DI 11.[1] Sunline specializes in procuring personal protective equipment ("PPE") for willing buyers, such as healthcare and pharmaceutical entities. *Id.* ¶ 1. Sterling is a Canadian company owned by defendants Robin Shugar and Aron Buchman "that markets itself as a broker in the global PPE market." *Id.* ¶¶ 8-9. In other words, Sterling connects distributors of PPE with manufacturers of PPE. *Id.* Sterling reached out to Sunline in the summer of 2020, offering to connect Sunline with high quality and reputable PPE manufacturers in China. *Id.* ¶ 30.

In July 2020, Sunline received a customer order that it sought to fulfill with Sterling's help. *Id.* ¶¶ 35-36. To that end, Sunline and Sterling executed an Affiliate Referral Agreement requiring Sunline to pay Sterling a 30% deposit (i.e., $897,000), which Sterling would hold in escrow pending final customer payment. *Id.* ¶ 37. Sunline wired the money to Sterling. *Id.* ¶ 38. Sunline's customer then cancelled its order, so Sunline — based on the Affiliate Referral Agreement — demanded that the Sterling defendants refund the $897,000 deposit. *Id.* ¶¶ 46-47. "On October 9, 2020, the Sterling Defendants refunded Sunline $375,000.00." *Id.* ¶ 48. Sterling apparently told Sunline that the remaining funds were held in escrow to fund additional deals that the two were jointly pursuing. *Id.* ¶ 49.

In December 2021, the Sterling defendants introduced Sunline to the Ezzi defendants — Ezzi Group, Inc., and Ahmad Rasouli. *Id.* ¶¶ 6, 50. According to Sunline, the Sterling defendants represented "that they had fully vetted" the Ezzi defendants who reputably

---

[1] Sunline first filed suit against Ezzi Group Inc. only, but later amended its complaint to add the other defendants. *Compare* DI 1 *with* DI 11.

manufactured "high-quality nitrile gloves located in China." *Id.* ¶ 51. After Sunline did its own vetting, it paid Ezzi $1,368,000 via wire transfer for PPE products. *Id.* ¶¶ 53-58. Sunline also paid Sterling "hundreds of thousands of dollars in 'referral fees' in connection with the Ezzi transactions." *Id.* ¶ 59. When Sunline received the first delivery of PPE from Ezzi, it contracted with an independent testing company to "ensure quality and composition" before importing the products to the United States. *Id.* ¶ 62. According to these tests, the gloves failed to meet requisite standards. *Id.* ¶¶ 63-64. Sunline demanded that Ezzi provide appropriate replacements or a full refund. *Id.* ¶ 64. Ezzi refused. *Id.* ¶ 65. Sunline also demanded that Sterling return the referral fees from the Ezzi transactions. *Id.* ¶ 68. Sterling refused. *Id.* Sunline tells us that "the Sterling Defendants knew that Ezzi did not have the necessary manufacturing capabilities to produce the large quantity of high-quality nitrile gloves ordered by Sunline, but nevertheless encouraged Sunline to enter into the purchase agreements with Ezzi so that Sterling would receive a referral fee." *Id.* ¶ 69. Sunline believes that all defendants "acted in concert to induce Sunline to purchase over one million boxes of Nitrile gloves from Ezzi, despite knowing that Ezzi would not deliver the promised gloves." *Id.* ¶ 70.

To add insult to injury, Sunline was led to believe that Ms. Shugar was a licensed Canadian attorney who would furnish Sunline with legal advice to further its PPE business. *Id.* ¶¶ 32-33, 42. After Sunline paid $60,000 in "consulting fees" for Ms. Shugar's legal representation, Sunline learned of two major concerns — Ms. Shugar likely had a conflict of interest due to her stake in Sterling and her Canadian law license had been administratively suspended. *Id.* ¶¶ 42-45.

Sunline filed its operative complaint on November 11, 2022. DI 11. After some delays, Ms. Shugar was eventually served, and on March 29, 2023, Frank Botta, Esq. appeared on her

3

behalf. DI 23. On May 9, 2023, Mr. Botta, on behalf of Ms. Shugar only, filed a motion to dismiss for *forum non conveniens* or, in the alternative, a motion to stay and compel arbitration. DI 32. At this point, Sunline had still been unable to serve Sterling or Mr. Buchman — Sterling failed to pick up its service package and Mr. Buchman failed to sign the delivery confirmation slip. DI 39-1 at 2. Recognizing Sunline's "good faith effort to locate and serve" defendants, we allowed Sunline to serve Sterling by certified regular mail and Mr. Buchman via e-mail and certified regular mail. DI 40. Sunline did so, and then sought default against both Sterling and Mr. Buchman. DI 44; DI 45; DI 46. The Clerk of Court entered default against Sterling and Mr. Buchman on November 8, 2023.[2] DI 47.

On December 28, 2023, with Sterling and Mr. Buchman in default, we ordered the case into arbitration — denying Ms. Shugar's motion to dismiss for *forum non coveniens* and granting her alternative motion to compel arbitration. DI 48. We stayed the case and placed it into suspense during the arbitration. DI 49. Sunline requested a hearing as to default judgment against Sterling, Mr. Buchman, and Mr. Rasouli, DI 50, which we granted, DI 51. We ordered Sunline to "file all evidence, argument, affidavits, documentation, or other information sufficient for the court to enter judgment in an amount certain under Rule 55(b)(2)" by February 15, 2024. DI 51. Sunline failed to do this, so we cancelled the hearing. DI 52. We noted that Sunline "may renew its motion for default judgment after the termination of the arbitration." DI 52; *see Farzetta v. Turner & Newall, Ltd.*, 797 F.2d 151, 153-155 (3d Cir. 1986) (recognizing heightened risk of conflicting judgments if default judgment entered prior to the conclusion of merits litigation).

---

[2] Default was entered against Ezzi Group on January 24, 2023 and against Mr. Rasouli on September 15, 2023. DI 16; DI 41.

Sunline and Ms. Shugar then filed multiple status updates informing us that arbitration had not been initiated and disputing who was responsible for paying the "substantial" fees associated with doing so. DI 53; DI 54; DI 56; DI 57. We issued an order that Sunline was responsible for initiating arbitration and that disputes over fee payment "should be taken up with the arbitrator(s)." DI 58. Ms. Shugar filed two more status updates informing us that Sunline had still not initiated arbitration, DI 59; DI 61, so we asked Sunline to explain, DI 62. Sunline told us that "it [did] not wish to pursue its claims against Ms. Shugar at this time" due to the costs associated with arbitration, requested dismissal as to only Ms. Shugar, and asked us to schedule a hearing on the potential default judgments[3] against Sterling, Mr. Buchman, and Mr. Rasouli. DI 63. Ms. Shugar responded, characterizing Sunline's request as seeking "to have this Court enter judgment against Defendant Sterling Arc Corp. — the entity in which Defendant Shugar has an ownership interest and which is a signing party to the arbitration agreement" and noting "any judgment entered against Sterling Arc also would, potentially, constitute a judgment against the interests of Defendant Shugar, due to her ownership interest in Sterling Arc." DI 64 ¶¶ 15, 18. Ms. Shugar requested we dismiss the entire case with prejudice in light of Sunline's "affirmative pleading that it has no intention of pursuing arbitration." *Id.* ¶ 23. Sunline responded, arguing that our order compelling arbitration applied only to the claims against Ms. Shugar because Sterling "had already been defaulted and was not party to Ms. Shugar's motion" and "Ms. Shugar does not represent Sterling Arc Corp. and no attorney has

---

[3] Sunline repeatedly stated that it had already received default judgments against Sterling, Mr. Buchman, and Mr. Rasouli. *See e.g.*, DI 63 ("There is no basis for dismissing the entire action against all defendants, however, because that would greatly prejudice the Plaintiff by denying it the benefit of the default judgments it obtained and prevent it from obtaining a final enforceable judgment"). Not so. Default was entered, DI 41; DI 42, but not default judgment.

5

even entered an appearance on its behalf." DI 65 at 2. After more briefing, we dismissed Ms. Shugar with prejudice and scheduled a default judgment hearing as to the defendants in default for October 15, 2024. DI 74.[4] On October 1, 2024, Sunline filed extensive documentation of its damages ahead of the default judgment hearing. DI 83.

On October 10, 2024, Frank Botta, Esq., Ms. Shugar's counsel, entered his appearance on behalf of Sterling, DI 87, and filed a motion to stay judgment against Sterling and compel arbitration, DI 88. We held the default judgment hearing on October 15, 2024, as scheduled, during which we heard argument from Sunline's counsel and testimony from Sunline's president. DI 93. Mr. Botta attended the hearing "on behalf of Sterling Arc and also Robin Shugar" and argued Sterling's earlier-filed motion. *Id.* at 3:11-12.

Following oral argument, Sunline filed its opposition to Sterling's motion, DI 91, and Sterling replied, DI 92. We must now decide whether to lift Sterling's default.

## II.    Analysis

Under Rule 55(c), we may "set aside an entry of default for good cause."[5] To do so, we must consider "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)). Prejudice usually concerns "the

---

[4] Ms. Shugar filed a motion for reconsideration of our decision not to dismiss Sterling, DI 71, which we denied, DI 74. Ms. Shugar appealed that decision, DI 76, and filed a motion for a stay pending appeal, DI 77. Sunline correctly pointed out a variety of problems with Ms. Shugar's appeal, DI 78, and the appeal was withdrawn shortly thereafter, DI 84.

[5] Sterling asks us to "stay the default judgment" against Sterling pursuant to Rule 55(c). As discussed above, no judgment has been entered in this case. The Clerk of Court entered default against Sterling on November 8, 2023. DI 47. We held a default judgment hearing on October 15, 2024. DI 90. What Sterling actually seeks is relief from the entry of default.

irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Briscoe v. Klaus*, 538 F.3d 252, 259 (3d Cir. 2008). A litigable or "meritorious" defense, is one that "if established at trial, would constitute a complete defense." *$55,518.05 in U.S. Currency*, 728 F.2d at 195. Finally, culpable conduct "means actions taken willfully or in bad faith." *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123-24 (3d Cir. 1983).

We find that lifting default would prejudice Sunline, that Sterling has demonstrated no meritorious defense, and that Sterling's actions constitute culpable conduct. Accordingly, we deny Sterling's motion and maintain the default against it.

### A. Sunline has made a showing of prejudice.

We find that Sunline would experience prejudice if we lifted default against Sterling. Prejudice typically involves "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Briscoe*, 538 F.3d at 259 (quotations omitted). It can also encompass the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003).

Sunline tells us that it would be prejudiced if we lifted default due to "significant additional expenses in discovery, the possible loss of evidence as witnesses forget information over time, and a significant delay in a resolution." DI 91 at 8. We do not give much weight to additional expenses, because they could be recoverable through means other than maintaining default. *Briscoe* directly addresses Sunline's second concern and instructs that loss of evidence is prejudice, 538 F.3d at 259, though we recognize Sunline's concern is somewhat speculative in this context. As to Sunline's third concern, "delay in realizing satisfaction on a claim rarely

7

serves to establish the degree of prejudice sufficient to prevent the opening [of] a default judgment entered at an early stage of the proceeding." *Emcasco Ins. Co., v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987).  On the one hand, in spite of the passage of time, this is an early stage of the proceedings.  Discovery has not commenced, depositions have not been taken, and arbitration was not initiated.  But on the other hand, Sunline and this Court have devoted significant resources to resolving this case.  We decided Ms. Shugar's motion to dismiss and motion to compel arbitration, responded to queries about arbitration proceedings, and held a default judgment hearing.  Sterling's request seeking the benefit of a motion that we disposed of over a year ago frustrates judicial efficiency.  And we also acknowledge that Sunline's "full and complete" strategy may have been different had Sterling timely responded to the complaint. *Ware*, 322 F.3d at 222.  Sunline likely would have taken a different approach throughout 2023 and 2024 if it were responding to Sterling together with Ms. Shugar rather than to Ms. Shugar alone.  Taking all of this into consideration, we find that lifting the default would result in at least slight prejudice to Sunline, so this factor supports denying Sterling's request for relief.

### B. Sterling failed to put forth a meritorious defense.

We find that Sterling has failed to put forth a meritorious defense.  For this factor to support relief, Sterling must assert a defense with some specificity that "if established at trial, would constitute a complete defense." *$55,518.05 in U.S. Currency*, 728 F.2d at 195.  We must "examin[e] the substance of [the purported] defense" to determine whether it is "meritorious" and do so at a level above mere facial scrutiny. *Harad v. Aetna Casualty & Surety Co.*, 839 F.2d

8

979, 982 (3d Cir. 1988). Sterling says its arbitration agreement with Sunline is a meritorious defense. We disagree. The arbitration clause has clearly been waived.[6]

"[W]aiver occurs where a party has intentionally relinquished or abandoned . . . a known right." *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 339 (3d Cir. 2023) (cleaned up) (quotations omitted). We must assess "the actions of the party who held the right . . . informed by the circumstances and context of each case." *Id.* (cleaned up). Contrary to Sterling's assertion, we need not consider prejudice for this factor.[7] The Supreme Court in *Morgan v. Sundance, Inc.*, explained that "prejudice is not a condition of finding that a party . . . waived its right to stay litigation or compel arbitration under the FAA." 596 U.S. 411, 419 (2022). Following *Morgan*, "the inquiry for waiver of arbitration rights must be identical to the inquiry for waiver of other contractual rights." *White*, 61 F.4th at 339. The question is simply whether Sterling acted "inconsistently with an intent to assert its right to arbitrate" *Id.* at 340.

The Third Circuit has not directly addressed whether defaulting constitutes waiver, but its related precedent is instructive. In *Nino v. Jewelry Exchange, Inc.*, the Third Circuit held that failure to timely assert the right to arbitrate may constitute waiver of that right. 609 F.3d 191, 208 (3d Cir. 2010) (finding waiver of right to compel arbitration when moving party first litigated the case "for fifteen months" in court). The typical example of this is when a party substantively engages in litigation and then belatedly attempts to invoke mandatory arbitration.

---

[6] There are a variety of other potential reasons that Sterling fails to prove a meritorious defense. For one, Sterling does not dispute Sunline's argument that arbitration "is only a procedural statement of where the claims should be heard." DI 91 at 6. And the Third Circuit has instructed that for an entry of default, we need not "evaluate defenses that do not bear directly on the meritoriousness of the underlying claim." *Hoxworth v. Blinder, Robinson & Co*, 980 F.2d 912, 922 (3d Cir. 1992), abrogated on other grounds by *Morgan v. Sundance*, 596 U.S. 411 (2022). But because waiver is clear, we resolve the issue there.

[7] We do consider prejudice for the first factor of default. *See supra* Section II.A.

9

*Id*.  But actively litigating is not the only way for a party to waive its rights.  "A court may refuse to enforce an arbitration agreement where, for example, the alleged defaulting party has acted inconsistently with the right to arbitrate."  *Id.* (quotations omitted).  Accordingly, we turn to the "the circumstances and context" of this case, *White*, 61 F.4th at 339, to evaluate whether Sterling acted "inconsistently with the right to arbitrate," *Nino*, 609 F.3d at 208.

Sterling failed to respond to Sunline's complaint or make any court appearance until the eve of default judgment.  Under Rule 12, Sterling's response to the complaint was due 21 days from the date of service, which at the latest was October 26, 2023.  DI 46-1 at 2 (21 days after service).  Sterling did not respond to the complaint.  All the while, Ms. Shugar participated in the case, describing herself as an "agent of Sterling . . . an owner, officer, and principal of Sterling" who had "authority to bind the corporation" in order to receive the benefit of the arbitration clause.  DI 35 at 7.  Yet Ms. Shugar opted ***not*** to bind Sterling with her arguments, having Mr. Botta represent her only in her individual capacity.  DI 23; DI 32; DI 35.  Sterling appeared for the first time on October 10, 2024, over a year after service was made.  DI 87.  At the default judgment hearing, Mr. Botta told us — for the first time — that he now represents both Ms. Shugar and Sterling.  DI 93 at 3:11-12.

We recognize that there is a difference between waiver and forfeiture.  Unlike with waiver, forfeited arguments can sometimes, though rarely, be revived.  *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 146-47 (3d Cir. 2017).  The Third Circuit has explained that "forfeiture is the failure to make the timely assertion of a right, an example of which is an inadvertent failure to raise an argument . . . waiver, in contrast, is the intentional relinquishment or abandonment of a known right."  *Id.* at 147 (cleaned up).  Sterling's conduct cannot fairly be called an "inadvertent failure to raise an argument."  Sterling made a strategic

10

decision not to join Ms. Shugar's defense despite Ms. Shugar having the "authority to bind the corporation." DI 35 at 7. Whatever the reason behind that choice may be, it cannot be characterized as anything but deliberate and calculated. If Sterling wanted to force Sunline to arbitrate its claims, as was its right, Sterling should have timely moved to compel arbitration. Other courts in this Circuit agree. *E. Constr. & Elec., Inc. v. Universe Techs., Inc.*, No. 10-1238, 2011 WL 53185, at *7 n.5 (E.D. Pa. Jan. 6, 2011) (reasoning that "default judgment is appropriate notwithstanding the agreements' arbitration provisions" due to waiver); *Torus U.S. Servs., Inc. v. Hybrid Ins. Agency, LLC*, No. 14-01630, 2015 WL 6445788, at *1 n.3 (D.N.J. Oct. 22, 2015) (finding Second Circuit precedent instructive that "a party waives its right to arbitration by defaulting").

 Sterling says that it has not acted inconsistently with an intent to assert the right to arbitrate because "enforcement of the ***defendants'*** right to arbitrate has been sought via Ms. Shugar's motion." DI 92 at 8 (emphasis in original). Sterling adds "Ms. Shugar did not have the financial ability and could not afford to pay to raise a defense on behalf of Sterling Arc. Sterling Arc, via Ms. Shugar, relied on the Court to validate the enforceability of the Affiliate Referral Agreement mandating that this case be decided in arbitration." DI 88-1 at 8. There are several problems with this argument. First, Sterling was already in default when we granted Ms. Shugar's motion to compel arbitration, so its reliance argument is nonsensical. Recall the timeline. Sunline had significant difficultly serving Sterling. DI 39. Ms. Shugar repeatedly stated that she was an agent of Sterling but did nothing to accept service. DI 32. We eventually allowed Sunline to serve Sterling by alternative service, DI 40, and Sterling's response to the complaint was due by October 26, 2023. Rule 12. Sterling failed to respond, so default was entered against it on November 8, 2023. DI 47. We granted Ms. Shugar's motion compelling

arbitration on December 28, 2023.  DI 49.  Sterling was in default for at least two months before to our order compelling arbitration and default had been formally entered against it for over a month.  Sterling's decision not to timely answer the complaint could not have been made in reliance on our decision compelling arbitration because it had not yet been made.

Second, Sterling puts itself in a double bind by arguing that Ms. Shugar and Sterling are not the same for recovery purposes (i.e., Ms. Shugar could not afford to defend Sterling), yet both should get the benefit of Ms. Shugar's litigation strategy (i.e., Sterling gets arbitration).  As Sunline helpfully illustrates, "Having chosen to sit on whatever rights it may have had until the court defaulted it, [Sterling] cannot not plausibly argue that it should be able to rely on anything another party — [Ms.] Shugar — did in this case.  In other words, it cannot deliberately invoke the choice of "heads I win" (I don't submit to the court's jurisdiction so I might later argue the court lacked jurisdiction), [or] "tails you lose" (you can't take a final judgment against me because I relied on [Ms.] Shugar to protect me)."  DI 91 at 11.  In sum, we do not find Sterling's argument that "Sterling Arc, via Ms. Shugar, relied on the Court to validate the enforceability of the Affiliate Referral Agreement" as a valid basis to preclude waiver.

Finally, Sterling makes an undeveloped, and arguably disreputable, assertion suggesting we lack subject-matter jurisdiction due to the arbitration clause.  DI 92 at 8-9.  Sterling states "[a] litigant may raise a court's lack of subject-matter jurisdiction at any time . . . Sterling Arc maintains that an arbitrator and not this Court has jurisdiction of the claims in this case, [so] this may be raised at any time." *Id.* (quotations omitted).  Yet Sterling cites nothing to support an arbitration clause divesting us of subject-matter jurisdiction.  That is because Sterling is incorrect.  *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 328 (3d Cir. 2022) ("Far from making a clear statement that the FAA strips courts of jurisdiction whenever there is an

arbitration agreement, Congress has made a clear statement telling the courts how they are to exercise that jurisdiction. Sections 3 and 4 of the FAA are not jurisdictional limitations.") We have subject-matter jurisdiction over this case, and Sterling's right to compel arbitration has been waived. It has failed to put forth a meritorious defense, so this factor favors denying relief from default.

### C. Sterling's delay is due to culpable conduct.

We find Sterling's conduct to be culpable. Culpable conduct "means actions taken willfully or in bad faith." *Gross*, 700 F.2d at 123-24. This includes a "willful disregard for responding to Plaintiffs' legal communications." *World Entm't Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012). "Innocent mishaps or mistakes, by contrast, do not suffice as culpable." *Lee v. Mecca*, No. 22-2871, 2023 WL 5814783, at *2 (3d Cir. Sept. 8, 2023).

As detailed above, Sunline experienced significant difficulty effectuating service on Sterling. DI 39; DI 40. Ms. Shugar was present in the case at that time, sat quietly while Sunline sought alternative service, and chose to be represented in her individual capacity alone. At the same time, Ms. Shugar argued that she deserved the benefit of the arbitration agreement, describing herself as an "agent of Sterling . . . an owner, officer, and principal of Sterling" who had "authority to bind the corporation." DI 35 at 7. Based on those representations, she benefitted from the agreement despite Sterling's failure to appear. DI 48.

Sterling tells us now that Ms. Shugar "could not afford to pay the legal fees associated with raising a defense on behalf of Sterling Arc." DI 88-1 at 6. At our October 15, 2024, hearing, Mr. Botta characterized it as Ms. Shugar not having "the pockets to defend both herself and Sterling." DI 93 at 6:23-25. But given Ms. Shugar's relationship to Sterling, "it would have taken just a couple extra lines of text" to add Sterling to her motion. *Id.* at 13:1-2. Sterling has

13

failed to explain away the obvious inference that Ms. Shugar was "hiding Sterling Arc Corp. from the view of this litigation," *id.* at 14:14-16, while she watched Sunline struggle to serve Sterling, sought counsel for only herself, and filed a motion in her individual capacity alone. Attempting to now say that "she argued both for herself and Sterling Arc" in her May 2023 motion, *id.* 6:23-24, despite not doing so, DI 35, is disingenuous.

Sterling repeatedly argues that its conduct was not culpable because it relied on our order granting Ms. Shugar's motion to compel arbitration. DI 88-1 at 9; DI 92 at 4-5. As discussed above, this argument fails for a variety of reasons. Most notably, our order issued after Sterling was already in default. It could not have relied upon a decision that did not yet exist. Moreover, Sterling places significant weight on the wording of our order stating "The Clerk of Court shall stay this case and place it into suspense while the parties arbitrate," DI 49. DI 92 at 4. Sterling says it relied on our ruling "in good faith." *Id.* This is another instance in which Sterling's conduct rings with gamesmanship. Here, because Sunline opted against arbitrating with Ms. Shugar and instead allowed her to be dismissed, Sterling wants to be treated like Ms. Shugar. But if things had gone differently, and Sunline succeeded in arbitration against Ms. Shugar, Sterling would surely argue against being bound by that ruling in light of our order granting only "Ms. Shugar's motion . . . to compel arbitration," DI 49, an arbitration in which Sterling did not participate. DI 91 at 11

Sterling "had actual notice of the suit in plenty of time to file an answer, and [its] reason for delay — a conclusory assertion that [Ms. Shugar could not afford to defend herself and Sterling] — falls woefully short of showing that [its] failure to appear was beyond [its] control." *Marks Law Offices, LLC v. Mireskandari*, 704 F. App'x 171, 178 (3d Cir. 2017). Sterling's "dilatory tactics in this case appear to be part of a carefully orchestrated plan . . . to delay this

14

action" during Sunline's arbitration with Ms. Shugar "in which [Sterling] had hoped to secure a favorable verdict to the exclusion of this matter." *Id.* "Unfortunately for them, this strategy did not pay off." *Id.*

### III.   Conclusion

The full context of this case demonstrates that Ms. Shugar and Sterling seek to "escape the consequences of their own counseled and knowledgeable decisions." *Coltec Indus. v. Hobgood*, 280 F.3d 262, 274 (3d Cir. 2002) (quotations omitted). Sterling failed to put forth a meritorious defense, and it has demonstrated clearly culpable conduct. Considering that together with the potential prejudice to Sunline, we deny Sterling's motion and maintain the default against it.